## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JOHN ALBERT MARTIN** | * | |
| *Petitioner* | * | |
| | * | |
| v. | * | Civil Action No. RWT 11-958 |
| | * | Criminal No. RWT 04-0235 |
| **UNITED STATES OF AMERICA** | * | |
| *Respondent* | * | |
| | * | |

## REISSUED MEMORANDUM OPINION AND ORDER

Pending before the Court is Petitioner John Albert Martin's petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  In it, Petitioner contends that he was denied his Sixth Amendment right to effective assistance of counsel.   Petitioner contends that his Counsel provided him with ineffective assistance at trial by 1) not explaining how his career offender status would affect his sentencing or that he could obtain a lower sentencing guideline range if he entered a guilty plea, 2) failing to review discovery and evidence, 3) failing to cross examine police officers regarding specific matters Petitioner deemed  important, 4) failing to call certain witnesses Petitioner deemed important, Pet'r Mem. Supp. 10–11, Apr. 13, 2011, ECF No. 1452-1.  The Court will deny Petitioner's § 2255 motion, because Petitioner failed to show that his counsel's representation was objectively unreasonable and/or resulted in actual prejudice.

### I.    Background

The Drug Enforcement Agency (DEA) began investigating the instant conspiracy in 2001, which culminated with the arrests of the majority of alleged co-conspirators in 2004.  Pet'r Mem. Supp. 5; Government Resp. 2, Aug. 12, 2011, ECF 1466.  The investigation was centered around the drug trafficking activities of Paulette Martin, who was a suspected leader of a drug

organization.  Pet'r Mem. Supp. 5; Government Resp. 2.  Petitioner John Albert Martin was her alleged husband and accomplice at the time of investigation.  Government Resp. 2.

Petitioner became known to police before the period of charged conspiracy, when, on October 23, 1996, the Montgomery County police stopped his car near Paula Martin's residence, seizing "a baggy of crack cocaine from his shirt pocket."  Pet'r Mem. Supp. 7.  In a separate incident, on April 16, 1997, Washington D.C. police stopped Petitioner near Paula's School of Performing Arts (PSPA), which was a business front for Paulette Martin's drug trafficking activities.  *Id.*; Government Resp. 2.  Officers seized cocaine, heroin, and marijuana from Petitioner—a portion of which was packaged for distribution.  Pet'r Mem. Supp. 7; Government Resp. 2.  Petitioner pleaded guilty in federal court to a possession of cocaine charge stemming from the July 4, 2002 incident and was sentenced to a term of imprisonment.  Government Resp. 3.  After his release, Petitioner reestablished his relationship with Paulette Martin.  *Id.*

The government's investigation produced a number of individuals and connections associated with Paulette Martin's drug trafficking operation.  One of these individuals was Nathan King, who transported shipments of cocaine from California to the DC/Maryland metropolitan area for delivery to Paulette Martin during the period 2002–2003.  Government Resp. 2.  The government identified an incident with Nathan King that it alleges directly involved Petitioner.  On June 28, 2002, Paulette Martin wired money to Nathan King in Arizona. *Id.*  Six days later, Takoma Park police stopped Petitioner near Paulette Martin's residence, and seized a multitude of items typically used to process cocaine for distribution, such as: "a handheld scale, which is used to measure narcotics; a black trash bag that contained about 30 kilogram wrappers, which are used to store bricks of cocaine; fabric softener, which is used to mask the odor of cocaine; and a four-pound box of baking soda, which is used in processing

cocaine." Pet'r Mem. Supp. 8; Government Resp. 2. On October 27, 2003, the Indiana Highway Patrol stopped Nathan King, seizing approximately twenty-two kilograms of cocaine that he had intended to deliver to Paulette Martin in Maryland. Government Resp. 2–3.

The investigation also produced Pernell Philpot, who, on March 11, 2004, the Wyoming Highway Patrol stopped and arrested after finding him in possession of approximately five kilograms of cocaine. *Id.* at 3. The government later intercepted Petitioner discussing and giving advice regarding Pernell Philpot's drug arrest. *Id.*

In the closing months of the investigation, from March 8, 2004 through June 2, 2004, the government engaged in court-authorized wiretap interceptions over five telephone lines. Pet'r Mem. Supp. 5; Government Resp. 3. Over three of those lines, conversations occurred that overtly involved Petitioner. Pet'r Mem. Supp. 5. Specifically, the government intercepted Petitioner requesting drugs from Paulette Martin and her alleged dealer Gwendolyn Levi, discussing the need to move their drugs from Paulette Martin's residence to PSPA due to neighborhood complaints, and evaluating Paulette Martin's observations of an undercover police officer near her residence. Government Resp. 3. The government also intercepted Petitioner speaking with several individuals concerning their purchase of drugs from Paulette Martin—he would tell co-conspirators where to meet Paulette Martin and whether drugs would be available. *Id.*

On June 1, 2004, the government executed search warrants at a number of locations, including Paulette Martin's residence and PSPA. *Id.* Petitioner and Paulette Martin were present when the warrant was executed. Pet'r Mem. Supp. 8; Government Resp. 3. Seven grams of cocaine and seven grams of heroin were recovered from a shaving kit belonging to Petitioner. Pet'r Mem. Supp. 8; Government Resp. 3. The government also recovered from Paulette

Martin's residence $7,865 in cash, six grams of crack cocaine, 19.06 grams of cocaine, 7.85 grams of heroin, and two digital scales.  Pet'r Mem. Supp. 8; Government Resp. 3–4.  During the execution of the search warrant at PSPA, agents recovered more scales and drug paraphernalia, 337 grams of cocaine base, eighteen grams of heroin, and 352 grams of cocaine.  Pet'r Mem. Supp. 8; Government Resp. 4.

On September 21, 2005, a grand jury returned a fifth superseding indictment to which Petitioner pleaded not guilty and opted to proceeded to trial.  Government Resp. 1.  Testifying in his own defense, Petitioner admitted that he used cocaine and heroin and that he sold marijuana, but denied any involvement in or profit from Paula Martin's drug business.  Pet'r Mem. Supp. 8. Petitioner denies having ever been married to or having any relation to Paula Martin—the fact that they share the same last name and residence is a coincidence—and describes their relationship as an "on and off love affair."  *Id.* at 9, 9 n.3.  Regarding the specific instances police officers arrested Petitioner for possession of drugs, Petitioner denied that any of those drugs were related to Paula Martin, Gwendolyn Levi, or the other alleged conspirators.  *Id.* at 9. On December 22, 2005 the jury returned a guilty verdict.  Government Resp. 1.

On December 2, 2009, the Fourth Circuit affirmed the judgment of this Court in a published opinion, *United States v. Johnson*, 587 F.3d 625 (4th Cir. 2009), and entered its formal mandate on January 12, 2010.  Pet'r Mot. 4, Apr. 13, 2011, ECF No. 1452.  On April 13, 2011, Petitioner filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct sentence.  *Id.* at 7.  The matter is fully briefed and ready for adjudication.

## II.    Discussion

Under 28 U.S.C. § 2255, a petitioner must prove by a preponderance of the evidence that "the sentence was imposed in violation of the Constitution or laws of the United States, or that

the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255 (2006); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). If the § 2255 motion, along with the files and records of the case, "conclusively show that [he] is entitled to no relief," a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. 28 U.S.C. § 2255(b); *United States v. White*, 366 F.3d 291, 297 (4th Cir. 2004) (stating that an evidentiary hearing is not required where a petitioner's allegations are "so palpably incredible, so patently frivolous or false as to warrant summary dismissal."). In demonstrating ineffective representation by counsel, it is insufficient to show there are differing factual assertions that create a dispute of fact—those differences must be "*material* under the circumstances." *See Pender v. United States*, Civ. A. No. DKC 09-0034, Crim. C. No. DKC 06-0083, 2012 WL 1078228, at *2 (D. Md. Mar. 29, 2012). In the instant motion, "Petitioner cannot show ineffective representation by counsel" sufficient to warrant an evidentiary hearing. *Id.*

In evaluating claims of ineffective assistance of counsel, the Court applies the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). First, Petitioner must show that counsel's representation fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In reviewing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. There is a presumption that counsel's actions are strategic trial decisions. *Id.* The court is thus highly deferential to counsel's decisions and reviews the challenged conduct in light of the totality of circumstances. *Id.* at 689–90. Under the second prong of the *Strickland* test, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different," where a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**A. Discussion of Plea Options and Review of Discovery During Plea Negotiations Was Proper**

Petitioner argues that his attorney was ineffective because he failed to explain to Petitioner the benefits of accepting the government's plea offer and that counsel failed to review properly with Petitioner the discovery and evidence. Pet'r Mem. Supp. 15, Apr. 13, 2011, ECF No. 1452-1. The government, however, contends that defense counsel did advise Petitioner on the implications of his prior convictions, and that defense counsel did spend numerous hours taking notes and reviewing discovery with Petitioner. Government Resp. 7, Aug. 12, 2011, ECF 1466.

While this case was pending, the U.S. Supreme Court reaffirmed in *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), and *Missouri v. Frye*, 132 S. Ct. 1399 (2012), the Sixth Amendment guarantee of a defendant's "right to have counsel present at all critical stages of the criminal proceedings." *Frye*, 132 S. Ct. at 1405. In a criminal justice system such as ours, which is "for the most part a system of pleas, not a system of trials," safeguarding the plea negotiation process is integral to safeguarding a fair trial. *See id.* at 1407 (quoting *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). The Supreme Court also clarified the second *Strickland* prong—i.e. that Counsel was ineffective—by defining what is required to show prejudice in the plea bargaining context. *See Lafler*, 132 S. Ct. at 1391; *Frye*, 132 S. Ct at 1409. Petitioner must show that but for the ineffective advice, there is a reasonable probability that 1) the plea offer would have been presented to the Court, 2) the Court would have accepted its terms, and 3) the conviction or sentence would have been less severe. *See Lafler*, 132 S. Ct. at 1380.

The *Lafler* test does not require relief in this instance because this Court finds Petitioner's claims as to the first *Strickland* prong is either lacking or not credible.  In *Strickland*, the Supreme Court accepted the American Bar Association's standards as "guides to determining what is reasonable," in the plea agreement context. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Jones v. Murray*, 947 F.2d 1106, 1110 (4th Cir. 1991).  These guiding principles require defense counsel to 1) notify the client of a plea offer; 2) advise the client of the option to proceed to trial; 3) present the client with the probable outcomes of both the guilt and sentencing phases of each alternative; and 4) permit the client to make the ultimate decision.  *Jones*, 947 F.2d at 1110–11 (denying habeas petition where defense counsel met the guidelines).  Here, Petitioner contests only the third principle, *see* Pet'r Mem. Supp. 15–16, Apr. 13, 2011, ECF No. 1452-1, which defense counsel satisfied.

Defense counsel immediately recognized Petitioner was a career offender and advised Petitioner of the consequences of his prior convictions. *See* Government Resp. 7, Aug. 12, 2011, ECF 1466; *see also* Government Resp. Attach., at 1, Aug. 12, 2011, ECF 1466-1.  Petitioner never indicated a lack of understanding regarding the implications of his prior convictions.  *See* Government Resp. Attach., at 1.  Furthermore, defense counsel met with Petitioner on at least thirteen separate occasions and spent approximately twenty-five hours with him reviewing the case prior to trial.  *Id.*  Defense counsel fully reviewed and took notes on the discovery, which he provided to Martin.  *Id.*  Defense counsel maintained contact with Petitioner and provided any materials requested.  *Id.*  Petitioner never indicated a lack of understanding regarding the scope of the discovery materials nor that he wished to review any additional discovery materials.  *Id.*

Petitioner has failed to demonstrate that defense counsel's performance fell below an objective standard of reasonableness.  *See Strickland v. Washington*, 466 U.S. 668, 688, 694

(1984); *see e.g.*, *Baires v. United States*, 707 F. Supp. 2d 656, 666 (E.D. Va. 2010) (denying relief without an evidentiary hearing because the claim directly contradicts the defendant's prior in-court representations); *Higgs v. United States*, 711 F. Supp. 2d 479, 552 (D. Md. 2010) (rejecting § 2255 claim without an evidentiary hearing because petitioner neither pleaded facts that entitle him to relief nor established that a material dispute regarding those facts existed). Therefore, Petitioner cannot satisfy either prong of the *Strickland* test, even when considering the extra emphasis on the plea process required by *Lafler* and *Frye*, and the request for relief with respect to this claim is denied.

### B. Counsel's Cross Examination of Police Officers Was Sufficient

Petitioner argues that his attorney was ineffective in his cross-examination of the police officers the government called as witnesses at trial.  Pet'r Mem. Supp. 20–22, Apr. 13, 2011, ECF No. 1452-1.  The government asserts that whether Petitioner feels defense counsel's cross-examination was effective is not essential to a § 2255 claim, Government Resp. 8–9, Aug. 12, 2011, ECF 1466, and that defense counsel does not even have to obtain Petitioner's consent for most aspects of the defense.  *United States v. Chapman*, 593 F.3d 365, 367 (4th Cir. 2010) ("It is by now well-established that in a criminal trial, defense counsel has authority to manage most aspects of the defense without first obtaining the consent of the defendant.").

Decisions involving trial strategy—such as the evidence defense counsel should introduce, the stipulations defense counsel should make, the objections defense counsel should raise, and the pre-trial motions defense counsel should file—do not require Petitioner's prior consent.  *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992).  Moreover, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  *Elmore v. Ozmint*, 661 F.3d 783, 857 (4th Cir. 2011) (quoting

*Strickland v. Washington*, 466 U.S. 668, 690–91 (1984)).  Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, "fall squarely within the ambit of trial strategy, and, if reasonably made, will not constitute a basis for an ineffective assistance claim."  *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987);  *accord United States v. Ortiz Oliveras*, 717 F.2d 1, 3 (1st Cir. 1983) ("[T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.") (citing *United States v. Bosch*, 584 F.2d 1113 (1st Cir. 1978)); *Bergmann v. McCaughtry*, 65 F.3d 1372, 1380 (7th Cir. 1995) (noting cross-examination decisions constitute trial strategy); *United States v. Villalpando*, 259 F.3d 934, 939 (8th Cir. 2001) ("[C]ross-examination techniques, like other matters of trial strategy, [are entrusted] to the professional discretion of counsel"); *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000) ("counsel's tactical decisions at trial, such as refraining from cross-examining a particular witness or from asking a particular line of questions, are given great deference"); *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) ("The decision as to whether to cross-examine  a witness is 'a tactical one well within the discretion of a defense attorney.'") (citing *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)).

In the instant case, defense counsel conducted a cross-examination based on his thirty-two years of experience litigating cases in state and federal courts, his thorough review of law and fact in Petitioner's case, and his analysis of the government's presentation.  *See* Government Resp. 9, Aug. 12, 2011, ECF 1466; *see also* Government Resp. Attach., at 2, Aug. 12, 2011, ECF 1466-1.  Defense counsel's decision about the scope of cross-examination was a tactical decision reasonably made during the course of trial, and it is not appropriate to rely on hindsight to determine whether his trial tactics were reasonable.  *See Strickland v. Washington*, 466 U.S. 668,

689 (1984) ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . ."); *see also Tice v. Johnson*, 647 F.3d 87, 105 (4th Cir. 2011) (quoting *Griffin v. Warden, Md. Corr. Adj. Ctr.*, 970 F.2d 1355, 1358 (4th Cir. 1992) ("[C]ourts should not conjure up tactical decisions an attorney could have made, but plainly did not.")).

Petitioner makes no showing that defense counsel "performed deficiently by not cross-examining the Government's witnesses." Pet'r Mem. Supp. 22, Apr. 13, 2011, ECF No. 1452-1. Therefore, Petitioner cannot satisfy either prong of the *Strickland* test and the request for relief with respect to this claim is denied. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) ("[A] habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.").

### C. Counsel's Decision Not Call Specific Witnesses was Proper

Petitioner argues that his attorney was ineffective because he failed to call Jackie Terrell or Cheryl Clark as a witness. Pet'r Mem. Supp. 23, 25. The government insists that the decision to call certain witnesses, like cross-examination decisions, is one of trial strategy, which "are virtually unchallengeable" when made after thorough investigation of law and facts. *See Elmore v. Ozmint*, 661 F.3d 783, 857 (4th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984)); *see also United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) (citing *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008) ("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney.")).

"Absent a showing that the tactical decision of counsel was so unreasonable in light of the need for the testimony that it amounted to a deprivation of an attorney who acted within 'the range of competence demanded of attorneys in criminal cases,' we are reluctant to second guess the tactics of trial lawyers." *Goodson v. United States,* 564 F.2d 1071, 1072 (4th Cir. 1977) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)); *see also Strickland*, 466 U.S. at 690. In the instant case, defense counsel's performance was reasonable. Defense counsel did interview one of the individuals Petitioner had proposed calling as witnesses at trial, but ultimately determined her testimony would not benefit Petitioner or the defense strategy. Government Resp. Attach., at 2, Aug. 12, 2011, ECF 1466-1.

In light of "the circumstances of counsel's challenged conduct, and . . . from counsel's perspective at the time," *Strickland*, 466 U.S. at 689, this Court finds that defense counsel's decision to not call Jackie Terrell or Cheryl Clark as witnesses is not constitutionally deficient. Defense counsel made a strategic decision to not call the two witnesses after a thorough investigation of law and facts, and the decision was certainly not "below the wide range of professionally competent performance." *Griffin v. Warden, Maryland Corr. Adjustment Ctr.*, 970 F.2d 1355, 1357 (4th Cir. 1992) ("Deficient performance is not merely below-average performance; rather, the attorney's actions must fall below the wide range of professionally competent performance.") (internal quotation marks omitted).

### D. Counsel Properly Challenged Admissibility of Government's Title III Evidence

Petitioner argues that his attorney was ineffective because he failed to seek the exclusion of the wiretap evidence based on inadequate minimization by law enforcement. *See* Pet'r Mem. Supp. 27, Apr. 13, 2011, ECF No. 1452-1. The government not only disputes this claim, but observes that "the admissibility of the government's Title III *was* challenged." Government

11

Resp. 13, Aug. 12, 2011, ECF 1466.  The fact that the Court ultimately denied the challenge is not evidence of a lack of effort or effectiveness on the part of defense counsel.

Petitioner's co-defendant Luis Mangual moved to suppress the wiretap evidence, Mangual Mot., Jan. 21, 2005, ECF 415, and Petitioner's defense counsel moved to adopt Mangual's motion.  Def.'s Mot. Adopt Mangual Mot., Jan. 21, 2005, ECF 417.   As a result of defense counsel's efforts, the government addressed the validity of Petitioner's telephone conversations and even devoted an entire section of its response brief to the suppression argument.  *See* Government Resp. 13.  Therefore, Petitioner's argument that defense counsel's performance was deficient because he failed to seek the exclusion of the wiretap evidence based on inadequate minimization by law enforcement fails because, in fact, the admissibility of the wiretap evidence was challenged, and the Court found that the wiretap evidence was admissible. *Id.* at 14.

### E.  Counsel's Advice Regarding the Negative Consequences of Testifying was Sufficient

Petitioner argues that his attorney was ineffective because he did not adequately warn Petitioner that, in committing perjury on the stand, he might open the door to cross-examination on previously suppressed statements and a harsher sentence.  *See* Pet'r Mem. Supp. 28–29, Apr. 13, 2011, ECF No. 1452-1.  On the contrary, the government notes that defense counsel "very carefully advised [Petitioner] of the consequences."  Government Resp. Attach., at 3, Aug. 12, 2011, ECF 1466-1.  Defense counsel specifically told Petitioner that if he were to commit perjury in his testimony, the Court "could determine a two level increase in offense level based on obstruction of justice."  *Id.*  This advice is consistent with the prevailing professional norms. Government Resp. 14.

12

The government also correctly asserts that even if defense counsel had not advised Petitioner of the consequences of committing perjury, this Court would still not consider defense counsel ineffective. *Id.* The "claim that he did not know he could suffer some penalty for testifying falsely is incredible. Merely taking the oath prefatory to testifying informs a witness that truthful testimony is expected. That the untruthful witness may not be aware of the exact penalty to be suffered does not mean that he is unaware of the prohibition against false testimony." *Robertson v. United States*, 144 F. Supp. 2d 58, 67 (D. R.I. 2001); *see also United States v. Mandujano*, 425 U.S. 564, 581 (1976) ("Respondent . . . was also warned that he could be prosecuted for perjury if he testified falsely. Since respondent was already under oath to testify truthfully, this explanation was redundant; it served simply to emphasize the obligation already imposed by the oath.").

In the instant case, Petitioner took an oath informing him that the Court would expect his testimony to be truthful. Government Resp. 15. This acceptance put Petitioner on warning of the prohibition against false testimony and eliminated Petitioner's ability to claim that defense counsel had failed to advise him about the consequences of testifying in his own defense. *Mayes v. United States*, Civ. A. No. 7:07-cv-00132, 2007 WL 4302829, at *9 (W.D. Va. Dec. 6, 2007) (holding petitioner's § 2255 claim failed because the court administered an oath requiring him to tell the truth during his trial).

### F.  Counsel Properly Presented his Closing Argument

Petitioner argues that his attorney was ineffective because, in his closing argument, he "failed to contend . . . that Petitioner was not involved in the charged narcotics conspiracy. . . after July 4, 2002." Pet'r Mem. Supp. 31, Apr. 13, 2011, ECF No. 1452-1. The government asserts that whether Petitioner feels defense counsel's closing argument was effective is not

essential to a § 2255 claim, Government Resp. 15–16, and that defense counsel "has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (citing *Herring v. New York*, 422 U.S. 853, 862 (1975)); *see also* Government Resp. 15.

In the instant case, defense counsel believed that the prosecution had presented "overwhelming evidence of drug activity." Government Resp. Attach., at 3, Aug. 12, 2011, ECF 1466-1. Therefore, defense counsel reasoned that his summation should focus on the argument that there was insufficient evidence connecting Petitioner directly to Paula Martin's drug trade or suggesting Petitioner was directly profiting from the sale of narcotics, such as the absence of a significant amount of money from Petitioner, the absence of a large quantity of narcotics from Petitioner, and the absence of any drug packaging materials from Petitioner. *See* Government Resp. 15–16.

The Sixth Amendment guarantee of a defendant's right to effective assistance of counsel extends to closing arguments. *See Yarborough*, 540 U.S. at 5–6 (citing *Bell v. Cone*, 535 U.S. 685, 701–02 (2002). However, "[j]udicial review of a defense attorney's summation is . . . highly deferential and doubly deferential when it is conducted through the lens of federal habeas. When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough*, 540 U.S. at 8 (citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). Relief with respect to this claim is denied.

III.   **Conclusion**

The Court finds that that Counsel's representation of Petitioner did not fall "below an objective standard of reasonableness."   *Strickland*, 466 U.S. at 687; *see also United States v. Ferguson*, 2011 WL 2792383 *3–4 (D.S.C. 2011), *appeal dismissed*, 2012 WL 432834 (4th Cir. 2012).   Accordingly, it is, this 25th day of February 2013, by the United States District Court for the District of Maryland,

**ORDERED**, that Petitioner's Motion to Vacate Under 28 U.S.C. § 2255 (ECF No. 1452) is **DENIED**; and it is further

**ORDERED**, that a certificate of appealability will not issue.


_____/s/_____
Roger W. Titus
United States District Judge