IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA                :

v.                                      : Criminal Case No. DKC 04-0235-5

JOHN ALBERT MARTIN, JR.                 :

**MEMORANDUM OPINION**

John Albert Martin is serving a 375-month sentence imposed by Judge Roger W. Titus in April 2006, for conspiracy to distribute and possess with intent to distribute controlled substances. The offense conduct concluded in June 2004. He has filed a Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Compassionate Release), or in the Alternative, for Imposition of a Reduced Sentence pursuant to Section 404 of the First Step Act. (ECF Nos. 1979, 1981). The Government filed an opposition, (ECF Nos. 1992, 1994), and Mr. Martin replied. (ECF No. 2004).[1] For the following reasons, the motion for compassionate release will be granted, rendering the request for alternative relief moot.

Ordinarily, "[t]he court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c) (2018). This general rule is subject to certain exceptions,

---

[1] The motions to seal (ECF Nos. 1980, 1993) are GRANTED. The personal medical information should remain private, except as recited herein. The motion for leave to file brief in excess of 35 pages (ECF No. 1980) also is GRANTED.

including the compassionate release provision, which allows the Bureau of Prisons ("BOP") to seek a modification of a prisoner's sentence. *See id*. § 3582(c)(1)(A). Under the First Step Act of 2018, the compassionate release provision was modified to allow prisoners to seek a sentencing reduction directly from the court. The provision now provides, in relevant part, that:

> The court may not modify a term of imprisonment once it has been imposed except that:
>
> (1) in any case that—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

>   and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Judge Hollander described the next step of the analysis as follows:

>   Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of the sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.
>
>   U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." The text mirrors the statute. Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):
>
>   1. Extraordinary and Compelling Reasons. Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
>   (A) Medical Condition of the Defendant.—
>
>   (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
>   (ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

On March 26, 2020, Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, directing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *See Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D.N.C. June 11, 2020). Then, on March 27, 2020, Congress

> passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281.  In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement to any inmate...." *Id.*
>
> The Department of Justice ("DOJ") has recognized the unique risks posed to inmates and BOP employees from COVID-19.  The DOJ recently adopted the position that an inmate who presents with one of the risk factors identified by the CDC should be considered as having an "extraordinary and compelling reason" warranting a sentence reduction. *See also* U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

*United States v. Gary Kess, Jr.,* No. CR ELH-14-480, 2020 WL 3268093, at *3–4 (D. Md. June 17, 2020) (footnote omitted).

The defendant argues that he meets the "extraordinary and compelling reasons" standard in two ways.  First, he contends that he meets the criteria under U.S.S.G. §1B1.13 commentary note 1(B) based on his age (65), the serious deterioration of his health, and the length of time he has already served.  Alternatively, he argues that those factors, combined with the ongoing COVID-19 pandemic, meet the standard under commentary note 1(D).

Application note 1(B) provides that extraordinary and compelling reasons exist where a defendant (1) is at least 65 years old, (2) is experiencing a serious deterioration in physical or mental health because of the aging process, and (3) has served at least 10 years or 75 percent of his term of imprisonment, whichever is less.  Mr. Martin satisfies the first and third criteria:  he is 65 years old and has served nearly 16 years of his sentence.

His physical health situation is less clear.  He states that he has required chronic care since January 2017, is limited to residing in a lower bunk in a cell on the first floor, and has been restricted from work requiring prolonged standing.  He lists his specific medical conditions (including hypertension, stage 3 chronic kidney disease, hyperlipidemia, a hernia, and cataracts), claiming that he meets each requirement under 1B1.13 commentary note 1(B).  (ECF No. 1981 at 13).  The Government, in contrast, contends that Mr. Martin's medical issues are stable and responding well to treatment, and that the chronic conditions are well controlled.  It states that he is able to function sufficiently in general population, does not need adaptive equipment to walk, and has not demonstrated a diminished ability to provide self-care.  The Government points to his Individualized Reentry Plan and progress reports as evidence that he does not meet the criteria for compassionate release.  (ECF No. 1991 at 11-12).

With regard to the argument that the addition of the risks posed by COVID-19 pandemic supports a finding of extraordinary and compelling reasons for release, the Government points out that there currently are no cases in the facility where Mr. Martin is housed.  The Government's response was filed on June 1 and, in these rapidly evolving circumstances, might have been filed before the most recent position noted in Judge Hollander's opinion was fully communicated.  In any event, the happy fact that there have

6

been no positive tests yet at the facility does not prevent the finding of extraordinary and compelling reasons for release.

The combination of factors, age, health conditions, COVID-19 risk, as well as length of time already served, and the changing sentencing landscape justify granting compassionate release to Mr. Martin.  Furthermore, Mr. Martin is also eligible for consideration under Section 404 of the First Step Act.

The Fair Sentencing Act of 2010 was signed into law on August 3, 2010.  It did not apply to those sentenced before its effective date.  The First Step Act was adopted in 2018, and provides that, notwithstanding *Dorsey v. United States,* 567 U.S. 260 (2012), certain persons may seek a retroactively reduced sentence.  Section 404(b) provides:  "A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed."  Section 404(a) defines a "covered offense" as a violation of a federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act, that was committed before August 3, 2010.  There are limitations, however, outlined in Section 404(c):

> No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by Sections 2 and 3 of the Fair Sentencing Act of 2010 or if a previous motion made under

> this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits.

Section 2 of the Fair Sentencing Act altered the quantity threshold for the mandatory minimums in 21 U.S.C. § 841, and Section 3 eliminated the mandatory minimum for simple possession. In *United States v. Wirsing*, 943 F.3d 175, 185-86 (4th Cir. 2019), the United States Court of Appeals for the Fourth Circuit concluded that a person is eligible if he was sentenced under 21 U.S.C. § 841(a) and (b)(1)(A)(iii) or (B)(iii).  In *United States v. Gravatt*, 953 F.3d 258, 262-64 (4th Cir. 2020), the Fourth Circuit held that a defendant remains eligible under the Act even if the conspiracy for which he was convicted encompassed distribution of both cocaine powder and crack cocaine.

Mr. Martin asserts that his sentence can and should be reduced to 240 months (the still applicable mandatory minimum) because the statutory penalty for his violation of 21 U.S.C. §841(b)(1)(A)(iii) was modified by the Fair Sentencing Act, and the sentencing factors under § 3553(a) justify that reduction.  He points to his family history, history of addiction, pursuit of vocational training, self-improvement, drug education, non-residential drug abuse treatment while incarcerated, and dated criminal history, as aspects of his own history and characteristics.  He describes his limited personal involvement in the offense, the arguably now-applicable sentencing guidelines,

the sentences imposed (and reduced) on others, and sentences that would be imposed today for similar conduct, as relevant factors.

The Government objects to any relief, preserving its argument that he is not eligible because of the actual amount of drugs determined to be involved and the multi-drug nature of the conspiracy. Somewhat incredibly, it also argues that the § 3553(a) factors counsel against **any** reduction. Particularly in light of the sentence reductions for others that have happened over the years, and the CARES Act releases to home detention of some defendants, it is particularly appropriate to reduce Mr. Martin's sentence under the First Step Act/Fair Sentencing Act. As a career offender, he was not eligible for the guideline reduction adjustments granted to some of the others. Now, under the First Step Act, he is eligible for consideration and, were he not also deserving of compassionate release, his sentence would be reduced to the mandatory minimum of 20 years.

Regardless of the mechanism for consideration of a reduced sentence, the court examines the factors under § 3553(a). By the time Mr. Martin engaged in the criminal conduct in this case, he was nearing 50 years of age. His significant criminal history included two convictions during his 20's in state court for armed robbery, the second of which violated his probation for the first. He served approximately 8 years incarcerated in the 1980's, being released on parole on November 28, 1988. Later convictions include

possession of CDS in 1996 and 2002, both of which were relevant conduct for the instant offense.  He became addicted to heroin at age 15, and began to use crack, powder cocaine, and marijuana in the early 1990's.  He completed high school and took electrical engineering classes at the University of the District of Columbia, although he did not receive a degree.  His employment history includes stints as a bus driver with WMATA and with Sparta Tours, and part-time work at his father's electronic repair business, as a car salesman, and as a service technician for a telephone company.  He says he comes from a close-knit family and has provided letters from family and friends who are supportive.  While incarcerated, Mr. Martin has pursued vocational training, taken self-improvement courses, and completed drug education and treatment.  He is now in a low-security facility.

Although the charged conspiracy involved significant quantities of cocaine and heroin and lasted several years, there was no violence involved, and Mr. Martin's role was minor (or at least much less significant than others).  He argues that, under current law, he would not be considered to be a career offender, and the applicable guideline range would be lower.  At the time of original sentencing, Judge Titus undoubtedly evaluated the roles of all involved in determining the appropriate sentence for Mr. Martin.  Many of the longer sentences imposed on co-defendants have been reduced, and two are now on home detention for the

remainder of their reduced sentences.  They include Paulette Martin, original sentence of life in prison, reduced to 360 months, now on home detention pursuant to the CARES Act; Luis Felipe Mangual, life sentence reduced to 480 months; and Gwendolyn Maria Levi originally sentenced to 400 months, reduced to 292 months, and now on home detention pursuant to the CARES Act. They and others also have motions pending or anticipated for further reductions.

    Mr. Martin has already served a sufficiently lengthy sentence to provide just punishment for his conduct, and to serve as a warning to himself and others to refrain from any similar conduct in the future.  He is no longer a danger to the community and has demonstrated during his incarceration an ability to be productive and law-abiding, with relatively minor disciplinary transgressions.  His age and medical conditions, particularly in light of the ongoing public health emergency, contribute to the conclusion that it is time for him to transition back to the community.  By separate order and amended judgment, Mr. Martin's sentence will be reduced to time served, plus 14 days.

                                                              /s/
                                          DEBORAH K. CHASANOW
                                        United States District Judge